**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

MARC ZITTER,                          Civil No. 15-6488 (NLH/KMW)

      Plaintiff,

      v.                              <u>OPINION</u>

CHRISTOPHER PETRUCCELLI, et
al.

      Defendants.

---

**APPEARANCES:**

Jeffrey Erik Jakob
William F. Cook
William M. Tambussi
Brown & Connery LLP
360 Haddon Avenue
Westmont, NJ 08108
    *Attorneys for Plaintiff*

Kevin J. Fleming
State of New Jersey
Office of The Attorney General
25 Market Street
P.O. Box 116
Trenton, NJ 08625
    *Attorney for Defendants*

<u>**HILLMAN, District Judge**</u>

    This case concerns an oyster harvesting operation in Cape

May, New Jersey.  Plaintiff sues several state officials

claiming that they destroyed thousands of dollars' worth of his

oysters in retaliation for protected speech.  Presently before

the Court is a motion to dismiss filed by Defendants Calliope
Alexander (an official at the New Jersey Department of Health),
Danielle Bytheway (Inspector at New Jersey Department of
Health), David Chanda (Director of Fish and Wildlife), Mark
Chicketano (Supervising Conservation Officer at Fish and
Wildlife), William Fazio (Inspector at New Jersey Department of
Health), Dominick Fresco (Conservation Officer at Fish and
Wildlife), Ryan Harp (Conservation Officer at Fish and
Wildlife), Tyler Hausamann (Conservation Officer at Fish and
Wildlife), Robert Thomas Martin (Commissioner of New Jersey
Department of Environmental Protection), Brett Nicklow
(Conservation Officer at Fish and Wildlife), Christopher
Petruccelli (Conservation Officer at Fish and Wildlife), Jason
Snellbaker (Conservation Officer at Fish and Wildlife), Brian
Tomlin (Conservation Officer at Fish and Wildlife), John/Jane
Doe(s), Individuals 1-10, and ABC Governmental Agencies 1-10.
For the reasons expressed below, Defendants' motion will be
granted.

I.   **BACKGROUND**

     Plaintiff asserts the following facts in his amended
complaint.  Plaintiff alleges that he started his oyster farming
business, Cape May Oyster Company, in the fall of 2012.  (Am.
Compl. ¶ 17.)  He initially purchased 300,000 oyster seeds from
the Haskin Shellfish Research Lab at Rutgers University.  (Am.

2

Compl. ¶¶ 18-19.)  In March of 2013, Plaintiff moved his oyster seed to a nusery barge at the mouth of the Dias Creek in Cape May County.  (Am. Compl. ¶ 20.)  At the time, Plaintiff believed Dias Creek was an approved area for growing shellfish pursuant to the New Jersey State Shellfish Growing Water Classification Charts and the fact that another oyster farmer had operations there.  (Am. Compl. ¶¶ 22-23.)  His operations were successful and he purchased hundreds of thousands of additional oyster seed.  (Am. Compl. ¶ 26.)  In May 2013, Plaintiff discovered that Dias Creek had been designated by the New Jersey Department of Environmental Protection as "prohibited waters" for aqua-farming pursuant N.J.A.C. 7-12:1, et seq.  (Am. Compl. ¶ 27.)[1]

Plaintiff alleges he made several attempts to determine whether or not the waters were prohibited.  Plaintiff alleges he sent an email on May 31, 2013 to New Jersey Department of Environmental Protection Shellfisheries Bureau Chief Russ Babb requesting a meeting to discuss whether or not the waters were prohibited, to which Babb did not respond.  (Am. Compl. ¶ 29.)  Plaintiff alleges in June 2013 he requested a meeting to obtain a permit from the Bureau of Marine Water Monitoring to move his oysters to approved waters per industry practice.  (Am. Compl. ¶

---

[1] Indeed, the New Jersey Administrative Code still has Dias Creek designated as "prohibited." N.J. Admin. Code § 7:12-2.1(a)(19)(iii).

3

30.)  Plaintiff alleges that in the meantime he began moving his oysters to an approved area, where they were segregated from oysters which had always been in approved waters.  (Am. Compl. ¶ 31.)  Plaintiff alleges he then stopped transporting the oysters on the advice of Lisa Calvo, Aquaculture Program Coordinator of Rutgers University, until he received guidance from the Bureau of Marine Water Monitoring.  (Am. Compl. ¶ 32.)  According to the amended complaint, on July 2, 2013, Plaintiff and Calvo met with Bureau Marine Water Monitoring Chief Bruce Friedman and his staff.  (Am. Compl. ¶ 34.)  No resolution was reached during the meeting, and Friedman allegedly told Plaintiff that reclassification of Dias Creek could take years even though the waters were clean.  (Am. Compl. ¶¶ 35-36.)  Plaintiff thereafter met with Babb but no immediate solution was reached and Plaintiff alleges he was never instructed to remove his oysters from Dias Creek.  (Am. Compl. ¶ 39.)

Plaintiff alleges that during this time he created a New Jersey Department of Health-approved plan to move his oysters before they were sold to the public.  (Am. Compl. ¶¶ 40-42.)  Plaintiff alleges that subsequent to the implementation of that plan, the New Jersey Department of Health inspected his facilities and gave him passing marks.  (Am. Compl. ¶ 43.)

Plaintiff asserts that on September 17, 2013, Conservation Officers from Fish and Wildlife began taking video surveillance

4

of Plaintiff's operations.  (Am. Compl. ¶ 61.)  Plaintiff alleges that on September 27, 2013 Conservation Officers raided his processing facility, shut down his operation, and told him that if he continued to farm he would face criminal charges. (Am. Compl. ¶ 63.)  The same day, Fish and Wildlife Conservation Officer Christopher Petruccelli issued Plaintiff a Summons (No. 091878) in State of New Jersey vs. Marc Zitter, which listed the offense as "N.J.S.A. 58:24-3 Harvested Shellfish from the . . . Dias Creek in violation of . . . N.J.A.C. 7:12-21(a)(19)(iii)." (Am. Compl. ¶ 64.)  Defendant Petruccelli told Plaintiff his farm was to be shut down, and confiscated his harvester and dealer tags.  (Am. Compl. ¶¶ 65-66.)   Defendant Petruccelli issued two additional summonses against Plaintiff dated October 17, 2013, Summons Nos. 091891 and 091892.  (Am. Compl. ¶ 67.) Summons No. 091891 claimed that Plaintiff violated N.J.S.A. 58:24-10 and ordered the confiscation of 370,000 oysters. (Am. Compl. ¶ 68.)   Summons No. 091892 claimed that Plaintiff violated N.J.S.A. 58:24-10 and ordered the confiscation of "one dry erase board, four 3" vinyl tags; five vinyl tag receipts." The following day, Fish and Wildlife Officers, including Defendant Petruccelli, entered three restaurants and seized Plaintiff's dealer tags from previous shipments. (Am. Compl. ¶ 72.)

Plaintiff alleges that on September 29, 2013, he met with

5

Petruccelli and Conservation Officer Brian Tomlin and explained that Dias Creek oysters were too small to be sold and had to be purified.  (Am. Compl. ¶ 73.)  On September 30, 2013, Petruccelli allegedly advised Plaintiff that, if he continued to harvest oysters, he would face criminal charges.  (Am. Compl. ¶ 74.)  Plaintiff alleges his request for clarification and instructions in writing were denied.  (Am. Compl. ¶¶ 75-76.)

Plaintiff further asserts that on September 30, 2013, Petruccelli and New Jersey Department of Health inspector Danielle Bytheway entered Plaintiff's processing facility without a warrant and took Plaintiff's log book. (Am. Compl. ¶¶ 78-79.)  On October 2, 2013, Defendants Tomlin, Bytheway, and New Jersey Department of Health inspector William Fazio allegedly had Haskin sign documents which permitted the Department of Health to embargo 1,300 oysters from the facility. (Am. Compl. ¶ 81.)  Plaintiff alleges these Defendants induced Haskin to sign a voluntary discontinuance form which effectively shut down his processing facility.  (Am. Compl. ¶ 83.) According to the amended complaint, Haskins later claimed she did not have the authority to sign the voluntary discontinuance. (Am. Compl. ¶ 85.)

Plaintiff alleges that on October 6, 2013, he was arrested by the Lower Township Police and charged with obstruction of justice for refusing to be served with a summons, which

Plaintiff alleges is a false statement. (Am. Compl. ¶¶ 95-97.)

Plaintiff alleges that beginning on October 15, 2014, Fish and Wildlife Officers confiscated 640,000 oysters from Plaintiff, two-thirds of which were in approved waters, and dumped them in the Maurice River. (Am. Compl. ¶¶ 98-99.) Fish and Wildlife officers allegedly confiscated Plaintiff's boats, rafts, and other equipment based on two search warrants dated October 8 and 11, 2013. (Am. Compl. ¶ 100.)

Plaintiff asserts that criminal proceedings were initiated against him for illegally harvesting and storing oysters. (Am. Compl. ¶ 118.) The Attorney General's office then transferred the case to Municipal Court, but because the municipal prosecutor had a conflict, it was transferred back. (Am. Compl. ¶¶ 119-120.) After a continuance, all criminal charges were dismissed on September 25, 2014. (Am. Compl. ¶ 130.)

Plaintiff claims his oysters were not prohibited for human consumption because they would be saleable had he been permitted to keep them in approved waters for six months. (Am. Compl. ¶ 146.) Further, Plaintiff alleges that at the time Defendants confiscated his equipment and disposed of his oysters, there was no permit recognized by the State of New Jersey that authorized the removal of seed oysters from "prohibited" waters to "approved" or "conditionally approved" waters other than from beds, which did not apply to any of his oysters because they

7

were in nursey barges.  (Am. Compl. ¶ 148.)

Plaintiff alleges that at least part of the reason legal
action was taken against him is because he was set to testify
against Defendant Petruccelli in an unrelated action by Fish and
Wildlife against a sea bass fisherman accused of overfishing.
(Am. Compl. ¶¶ 54-55.)  The fisherman ultimately accepted a plea
bargain and Plaintiff never testified.  (Am. Compl. ¶ 59.)

Plaintiff's amended complaint contains nine counts: (Count
I) Fourth Amendment claim pursuant to 42 U.S.C. § 1983; (Count
II) Takings Clause claim pursuant to 42 U.S.C. § 1983; (Count
III) equal protection/selective enforcement claim pursuant to 42
U.S.C. § 1983; (Count IV) equal protection/class of one claim
pursuant to 42 U.S.C. § 1983; (Count V) First Amendment
retaliation claim pursuant to 42 U.S.C. § 1983; (Count VI)
malicious prosecution pursuant to 42 U.S.C. § 1983; (Count VII)
violation of the New Jersey Constitution; (Count VIII) violation
of the New Jersey Civil Rights Act, N.J.S.A. 10:6-2(c); (Count
IX) malicious prosecution under state law; (Count X) civil
conspiracy; (Count XI) violation of New Jersey Tort Claims Act,
N.J.S.A. 59:1-1, et seq.  Defendants move to dismiss all claims
on the basis of Eleventh Amendment and qualified immunity.  They
further seek to dismiss Plaintiff's complaint for failure to
state a claim.

## II.  <u>JURISDICTION</u>

The Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a), which provides in relevant part, "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

## III. <u>STANDARDS OF LAW</u>

### A. Motion to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. <u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim.  <u>Bogosian v.</u>

Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977).  However,
"[a]lthough the Federal Rules of Civil Procedure do not require
a claimant to set forth an intricately detailed description of
the asserted basis for relief, they do require that the
pleadings give defendant fair notice of what the plaintiff's
claim is and the grounds upon which it rests."  Baldwin Cnty.
Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984)
(quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks
"'not whether a plaintiff will ultimately prevail but whether
the claimant is entitled to offer evidence to support the
claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007)
(quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also
Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in
Twombly expounded the pleading standard for 'all civil actions'
. . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.
2009) ("Iqbal . . . provides the final nail-in-the-coffin for
the 'no set of facts' standard that applied to federal
complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has
provided a three-part analysis in reviewing a complaint under
Rule 12(b)(6).  First, the Court must take note of the elements
needed for plaintiff to state a claim.  Santiago v. Warminster
Tp., 629 F.3d 121, 130 (3d Cir. 2010).  Second, the factual and

10

legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Id.; Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950).  Third, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  Id.  A complaint must do more than allege the plaintiff's entitlement to relief.  Fowler, 578 F.3d at 210; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element.  This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element").

A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

11

Finally, a court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

### B. Subject Matter Jurisdiction

A motion to dismiss for lack of subject matter jurisdiction implicates Federal Rule of Civil Procedure 12(b)(1). The standard to be applied when deciding a motion under Rule 12(b)(1) depends on the nature of the motion.

Where a party argues that the complaint on its face is insufficient to invoke the Court's subject matter jurisdiction, such as a claim that the complaint fails to present a federal question or fails to demonstrate diversity of citizenship, then the Court applies the same standard as utilized in deciding a motion under Rule 12(b)(6). Constitution Party of Pa. v. Aichele, 757 F.3d 347, 358 (3d Cir. 2014) (citing Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 889–92 (3d Cir. 1977)). The plaintiff has the benefit of procedural safeguards,

12

because the court must consider the allegations of the complaint as true.  <u>CNA v. United States</u>, 535 F.3d 132, 140 (3d Cir. 2008).

**IV.  <u>ANALYSIS</u>**

Plaintiff's federal claims will be dismissed for failure to state a claim.  Plaintiff's Takings claim will be dismissed with prejudice.  Plaintiff's remaining federal claims for malicious prosecution, violation of his procedural due process rights, violation of his substantive due process rights, First Amendment retaliation, and violation of the equal protection clause will be dismissed without prejudice.  Because the Court is dismissing every claim over which it had original subject matter jurisdiction at an early stage in the litigation it declines to exercise supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(c)(3).  The Court also need not reach the issue of qualified immunity.

**A.  Malicious Prosecution**

Plaintiff alleges that Defendants instituted a criminal action against him without probable cause.  (Am. Compl. ¶¶ 194, 186).  Plaintiff further alleges the criminal proceeding was terminated in his favor.  (Am. Compl. ¶ 185.)

A constitutional claim for malicious prosecution in the Third Circuit pursuant to Section 1983 requires a plaintiff to show that: "(1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the

defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding." Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007).  Probable cause is "defined in terms of facts and circumstances 'sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975).

Defendants argue Plaintiff's malicious prosecution claims should be dismissed because there was probable cause to believe that Plaintiff violated state law by farming, harvesting and selling oysters grown in "prohibited" waters.  Defendants argue that Plaintiff asserts in his amended complaint that he farmed the oysters grown in prohibited waters, i.e., Dias Creek. Specifically, Defendants argue there was probable cause to find that Plaintiff violated N.J.S.A. 58:24-3, which provides:

> The department shall prohibit the taking of oysters, clams or other shellfish from a place which has been condemned by the department pursuant to this act, and shall also prohibit the distribution, sale, offering for sale or having in possession of any such shellfish so taken, without a permit so to take, distribute, sell, offer to sell, or have in possession, first obtained from the department, under such rules and regulations as it shall adopt. A fee of $25.00 shall

14

be charged for any permit so issued.[2]

While Plaintiff does allege in the amended complaint that Dias Creek was designated as prohibited waters, he argues that N.J.S.A. 58:24-3 must be read coextensively with the FDA's National Shellfish Sanitation program guidelines. Plaintiff argues that FDA's guidelines provide that shellfish in prohibited waters may be used for human consumption under the following conditions: if the source of the seed is sanctioned by the authority; the restricted growing area has acceptable levels of poisonous or deleterious substances; or the seed is cultured in approved waters for six months. (Am. Compl. ¶ 141.)

Defendants point out, however, that even if the FDA guidelines applied, Plaintiff fails to plead any of these exceptions were applicable. For example, Plaintiff alleges that he moved oyster seed from the Dias Creek in April 2013. (Am. Compl. ¶¶ 20, 21, 23.) He then alleges that he sold oysters in August 2013, only five months after the oysters were in non-approved waters, falling short of the six month purification period. (Am. Compl. ¶ 52.)[3]

---

[2] Additionally, N.J.S.A. 58:24-2 provides that the New Jersey Department of Environmental Protection shall immediately condemn any oyster bed or other place from which oyster may be taken upon discovering that such place is polluted or otherwise dangerous to health.

[3] Plaintiff also fails to allege that he complied with the other

Thus, the face of Plaintiff's amended complaint demonstrates that there was probable cause that Plaintiff violated N.J.S.A. 58:24-3 and the FDA guidelines.  Plaintiff's malicious prosecution claim will be dismissed without prejudice. As it is conceivable that his pleadings were simply inartful, the Court will give him an opportunity to try to state a constitutional malicious prosecution claim in a second amended complaint.

**B.    Procedural Due Process**

In his amended complaint, Plaintiff alleges that Defendants "acting under color of state law, illegally and without jurisdiction, authority or justification, seized and/or authorized to be seized Plaintiff Zitter's oyster-farming equipment, harvester's tags, and log book." (Am. Compl. ¶ 151.) Plaintiff further alleges that, "Defendants' seizure of Plaintiff's property and their destruction of his oysters violated Plaintiff Zitter's rights to be free of unreasonable searches and seizures under the Fourth Amendment and procedural and substantive due process under the Fourteenth Amendment to the United States Constitution." (Am. Compl. ¶ 157.)

"In procedural due process claims, the deprivation by

---

aspects of the FDA rules, that the source of the seed was sanctioned by the authority and that the prohibited waters the seeds were growing in had acceptable levels of poisonous or deleterious substances.  (Am. Compl. ¶ 141.)

state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of* law . . .  The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." <u>Zinermon v. Burch</u>, 494 U.S. 113, 126 (1990) (emphasis in original).  "In order to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." <u>Alvin v. Suzuki</u>, 227 F.3d 107, 116 (3d Cir. 2000).

In this case, Plaintiff has not pled that he appealed, either administratively or judicially, adverse actions taken by the Department of Environmental Protection or any of the Defendants.  Plaintiff argues that while mechanisms were in place for him to recover his seized equipment, he was unable to retrieve his oysters because they were dumped.  Thus, Plaintiff argues the pre- and post-deprivation procedures were inadequate.

The Court finds these conclusory allegations insufficient to state a claim.  N.J.S.A. § 24:4-2, a provision governing the condemnation or destruction of food, provides that the superior court or municipal court having jurisdiction in the municipality, shall have jurisdiction to hear confiscation

17

actions.  Further, pursuant to the New Jersey Appellate Rules,
Plaintiff had the right to appeal the final decision or action
of any state administrative agency or officer to the New Jersey
Appellate Division.  N.J. R.A.R 2:2-3.  Plaintiff has not
sufficiently pled facts which show he filed an action in state
court and was denied both pre- and post-deprivation process.  As
such, this claim will be dismissed for failure to state a claim.
The Court will grant leave to amend the due process claim, in an
abundance of caution.

### C. Substantive Due Process

Plaintiff's substantive due process claim fails because
substantive due process protection has "for the most part been
accorded to matters relating to marriage, family, procreation,
and the right to bodily integrity." Albright v. Oliver, 510
U.S. 266, 272 (1994).  None of those matters are at issue here.
Further, "[w]here a particular Amendment provides an explicit
textual source of constitutional protection against a particular
sort of government behavior, that Amendment, not the more
generalized notion of substantive due process, must be the guide
for analyzing these claims." Id. at 273; see also County of
Sacramento v. Lewis, 523 U.S. 833, 843 (1998) (quoting United
States v. Lanier, 520 U.S. 259, 272 n.7 (1997)) ("'[I]f a
constitutional claim is covered by a specific constitutional
provision, such as the Fourth or Eighth Amendment, the claim

18

must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process.'")). Because Plaintiff has asserted a claim for a violation of his Fourth and Fifth Amendment rights for Defendants' conduct, Plaintiff's claim for violation of his substantive due process rights is duplicative and will be dismissed.

### D. Takings Clause

In his amended complaint, Plaintiff alleges Defendants' "unlawful taking of Plaintiff's property and their destruction of his oysters violated Plaintiff Zitter's rights under the Takings Clause of the Fifth Amendment and the Due Process Clause of the Fourteenth Amendment to the United States Constitution." (Am. Compl. ¶ 167.)

The Fifth Amendment provides, in relevant part, "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V.  "A 'taking' may more readily be found when the interference with property can be characterized as a physical invasion by government, than when interference arises from some public program adjusting the benefits and burdens of economic life to promote the common good." Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978) (citation omitted).  "[G]overnment regulation - by definition - involves the adjustment of rights for the public good.  Often this adjustment curtails some potential for the use

or economic exploitation of private property.  To require compensation in all such circumstances would effectively compel the government to regulate by purchase." Andrus v. Allard, 444 U.S. 51, 65 (1979).

In Bennis v. Michigan, 516 U.S. 442, (1996), the Supreme Court considered whether a governmental seizure of property for law enforcement purposes violated the Takings Clause.  Mr. Bennis was convicted of gross indecency for engaging in sexual activity with a prostitute in a car co-owned with his wife, the petitioner.  Id. at 442.  A Michigan court ordered Mr. Bennis' car forfeited under a state law that permitted forfeiture of property that constituted a public nuisance.  The petitioner claimed that the forfeiture constituted a taking of private property for public use in violation of the Takings Clause.  Id. at 452.  The Supreme Court found that petitioner's status as an innocent co-owner did not overcome the State's ability to act pursuant to its laws and held that, "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." Id.  The Supreme Court found the petitioner did not have a valid Takings claim since the property was not acquired pursuant to the State's eminent domain powers and was otherwise lawfully acquired.  Id.; see also AmeriSource Corp. v. United States, 525

20

F.3d 1149, 1153 (Fed. Cir. 2008) (property seized and retained pursuant to the police power does not raise a Takings Clause claim).

Likewise here, Plaintiff's property was seized pursuant to New Jersey statute which in order to protect the public health requires the Department of Environmental Protection to prohibit the taking and sale of oysters from contaminated waters (N.J. Stat. Ann. § 54:24-3) and authorizes the agency to destroy or dispose of any such food "[e]xposed or offered for sale, or had in possession with intent to sell" (N.J. Stat. Ann. § 24:4-11). Plaintiff admits that his oysters were in prohibited waters and that he sold or intended to sell these oysters to the public. (Am. Compl. ¶ 52.)  This Court will dismiss the Takings claim with prejudice for failure to state a claim.[4]

**E. First Amendment**

Plaintiff alleges his "offer to testify against the [Department of Environmental Protection] in the case involving the sea bass fishermen . . . was an act of speech protected by the First Amendment to the United States Constitution." (Am.

---

[4] In addition, any Takings claim is premature because Plaintiff has not alleged that just compensation was denied. R & J Holding Co. v. Redevelopment Auth. of Cty. of Montgomery, 670 F.3d 420, 432 (3d Cir. 2011) ("until just compensation has been denied, an owner has not suffered a constitutional injury and does not have a federal takings claim").

Compl. ¶ 180).

"To state a First Amendment retaliation claim, a plaintiff must allege two things: (1) that the activity in question is protected by the First Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action." Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir. 2006) (further citation omitted). "The first factor is a question of law; the second factor is a question of fact." Id. Defendants argue Plaintiff's First Amendment retaliation claim should be dismissed because he did not engage in a protected activity. Specifically, Defendants argue that a "free-speech retaliation claim is actionable under § 1983 only where the adverse action at issue was prompted by an employee's actual, rather than perceived, exercise of constitutional rights." (Opp. Br. at 42 (citing Heffernan v. City of Paterson, 777 F.3d 147, 153 (3d Cir.), cert. granted sub nom. Heffernan v. City of Paterson, N.J., 136 S. Ct. 29 (2015), and rev'd and remanded sub nom. Heffernan v. City of Paterson, N.J., 136 S. Ct. 1412 (2016)).

Plaintiff's First Amendment claims are based on his "offer" to testify against the Department of Environmental Protection in a case involving a sea bass fisherman, and that the actions taken against him were in retaliation of this hypothetical testimony. (Am. Compl. ¶¶ 59, 180.) It is undisputed that

Plaintiff was never called to testify and never testified.[5]  As written in the amended complaint, Plaintiff does not allege that he engaged in constitutionally protected speech.  Accordingly, Plaintiff has not stated a First Amendment claim, and this claim will be dismissed for failure to state a claim.  However, it is conceivable that Plaintiff may be able to assert facts showing that he engaged in speech.  Accordingly, this claim is dismissed without prejudice.

**F. Equal Protection**

In his amended complaint, Plaintiff alleges that "Defendants treated Plaintiff differently from others who were similarly situated by taking the actions described above while allowing others to grow and remove shellfish from waters classified as prohibited without consequence."  (Am. Compl. ¶ 172.)

To state a selective prosecution claim, Plaintiff must show that: (1) similarly situated persons were not prosecuted and (2) the decisions were made on the basis of an unjustifiable

---

[5] The Court finds the recent Supreme Court case, <u>Heffernan v. City of Paterson, N.J.</u>, 136 S. Ct. 1412, 194 L. Ed. 2d 508 (2016), distinguishable.  The Supreme Court held that a police officer stated a § 1983 claim by alleging he was demoted because his employer believed, albeit mistakenly, that he engaged in political speech.  In <u>Heffernan</u>, the employer thought the employee "*had* engaged in protected speech" and therefore the retaliation was unlawful.  <u>Id.</u> at 1415 (emphasis in original).  Here, Plaintiff does not allege he engaged in any actual speech, or that Defendants believed that he engaged in speech.

standard or arbitrary classification.  Gov't of Virgin Islands v. Harrigan, 791 F.2d 34, 36 (3d Cir. 1986) (internal citations and quotations omitted).  Plaintiff also attempts to state an equal protection claim based on a "class of one," i.e., that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment under the holding of Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000).

In his complaint, Plaintiff alleges that one other oyster farmer[6] was growing oysters a few hundred feet away from his operations and "was never cited, charged, or prosecuted by the NJDEP or NJDOH, nor were his oysters seized by any Conservation Officers from [Fish and Wildlife] or his business shut down by them." (Am. Compl. ¶¶ 23-25.)  Plaintiff, however, fails to allege sufficient facts showing how this neighboring farmer was similarly situated.  For example, did this other farmer have a permit, did this farmer grow the same amount of livestock, and did this farmer sell livestock directly from Dias Creek?[7]

---

[6] In his complaint, Plaintiff later makes reference to Betsy Haskin, an oyster farm who shared facilities with Plaintiff and was never cited or charged with any crime.  (Am. Compl. ¶ 47.)  It is unclear whether Haskin is the oyster farmer referred to in paragraphs 23-25 of the amended complaint, or whether Plaintiff makes reference to two other farmers.  Regardless, however, Plaintiff does not sufficiently allege how these other oyster farmers were similarly situated.

[7] Defendants argue that Plaintiff's equal protection claim should

24

Further, Plaintiff does not allege he was treated differently from "others" but from one other farmer.  This is insufficient to establish Plaintiff was "singled out."  Enqquist, 533 U.S. at 601.  Accordingly, Plaintiff's equal protection claims will be dismissed without prejudice.

**XI.  CONCLUSION**

Defendants' motion to dismiss will be granted. An appropriate Order follows.

    __Noel L. Hillman_____
    NOEL L. HILLMAN, U.S.D.J.

Dated: September 30, 2016

At Camden, New Jersey

---

be dismissed because the decision to charge Plaintiff with violating N.J.S.A. § 58:24-3 was within the discretion of the arresting officers.  (Def.'s Br. at 42-43 (citing Engquist v. Oregon Dep't of Agr., 553 U.S. 591, 603-04 (2008)).  In Engquist, the Supreme Court, in dicta, found that the decision of a police office to issue one driver a speeding ticket over other speeding drivers could not state a "class of one" claim because the officer has discretion in that situation, permitted that the decision to issue a ticket was not based on categories such as race or class.  Id. at 604.  Engquist is distinguishable, however, because Plaintiff alleges Defendants intentionally discriminated against him based on his intention to testifyg in an unrelated case.  (Am. Compl. ¶¶ 54-58.)